UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SARAH E. RAINERI,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. 3:14-cv-05453-RBL-KLS

REPORT AND RECOMMENDATION

Noted for April 24, 2015

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On February 3, 2011, plaintiff filed an application for SSI benefits, alleging disability as of November 1, 2009. *See* Dkt. 9, Administrative Record ("AR") 20. That application was denied upon initial administrative review on August 1, 2011, and on reconsideration on October 13, 2011. *See id.* A hearing was held before an administrative law judge ("ALJ") on August 29,

2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 37-82.

In a decision dated October 25, 2012, the ALJ determined plaintiff to be not disabled. *See* AR 20-31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 22, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 416.1481. On June 10, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on September 23, 2014. *See* Dkt. 9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for further administrative proceedings, because the ALJ erred in failing to properly consider the opinions of Bruce Eather, Ph.D., John F. Robinson, Ph.D., and Michele Dunn-Clarke, LMHC, and in failing to fully adopt or give valid reasons for rejecting the opinion of Norma Brown, Ph.D. For the reasons set forth below, the undersigned agrees the ALJ erred as alleged and therefore in determining plaintiff to be not disabled. Accordingly, the undersigned recommends that defendant's decision to deny benefits be reversed and that this matter be remanded for further consideration of those opinions.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991)

("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I. The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2dat 1119 n.10.

resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A. Dr. Eather and Dr. Robinson

In late July 2011, Dr. Eather, a non-examining consulting psychologist, opined that plaintiff was moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *See* AR 91. In explaining the above limitations, Dr. Eather stated plaintiff "has shown the ability to be quite social when it suits her needs, but ongoing personality issues contraindicate working [with] the public or closely with co-workers." *Id.* In mid-October 2011, Dr. Robinson assessed plaintiff with the same moderate social functional limitations, explaining that she "[c]an independently persist at simple repetitive tasks for two-hour periods through the day." AR 104.

The ALJ accorded the opinions of Dr. Eather and Dr. Robinson "significant weight," because they were consistent with plaintiff's self-reported activities and mental health records. AR 27. Plaintiff argues that although the ALJ stated she was according these opinions significant weight, she did not actually adopt them when assessing plaintiff's residual functional capacity

("RFC"). The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.*

If a disability determination "cannot be made on the basis of medical factors alone at step three of" the sequential disability evaluation process, the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.* RFC thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.*

An inability to work, however, must result from the claimant's "physical or mental impairment(s)." *Id.* Accordingly, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found plaintiff had the following mental residual functional capacity:

> **. . . [Plaintiff] is able to understand, remember and carry out simple, repetitive tasks; in order to maintain focus and concentration, she would require a 15-minute break after working for two-hour intervals. She would need work in a low stress environment defined as only occasional**

> **change in the workplace setting. She cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental and occasional contact with the general public is not precluded. . . .**

AR 24 (emphasis in original). Plaintiff argues, and the undersigned agrees, that in assessing this RFC the ALJ failed to adequately account for the moderate limitation in the ability to get along with co-workers found by both Dr. Eather and Dr. Robinson. Indeed, the ALJ made no mention of any limitation in that social functional area. Defendant argues the ALJ reasonably accounted for this moderate limitation by finding plaintiff would need breaks at two-hour intervals, would need a low stress environment, should have only occasional contact with the general public, and should not answer telephone calls. But none of these limitations necessarily have anything to do with getting along with co-workers. Because the ALJ did not give any reasons for rejecting Dr. Eather's and Dr. Robinson's assessed limitations – but to the contrary accorded them significant weight – she erred in not including them in her RFC assessment.

B. Dr. Brown

In late January 2011, Dr. Brown, an examining psychologist, found plaintiff to be moderately limited in her ability to understand, remember and persist in tasks following simple instructions, in her ability to learn new tasks, and in her ability to communicate and perform effectively in a work setting with limited public contact. *See* AR 351. Dr. Brown estimated these limitations would be expected to last for a maximum of six months. *See* AR 352. As with the opinions of Dr. Eather and Dr. Robinson, the ALJ "accorded significant weight" to Dr. Brown's opinion. AR 28. Despite according it such weight, however, plaintiff argues the ALJ here too failed to properly account for the above social functional limitations in her RFC assessment. The undersigned agrees in part.

In regard to the moderate limitation in plaintiff's ability to communicate and perform

effectively in a work setting with limited public contact, the ALJ's restrictions on working with the general public set forth above reasonably account for that. On the other hand, the ALJ's finding that plaintiff is able to understand, remember and carry out simple, repetitive tasks fails to take into account the moderate limitation Dr. Brown found she had in that area. Indeed it is in direct contrast thereto. Nor does the ALJ's RFC assessment contain any limitation concerning learning new tasks. Defendant argues these limitations are accommodated by the need for a 15-minute break every two hours to maintain focus and concentration the ALJ assessed. This does not address the limitation on the ability to learn new tasks, however, and the need to take a break for 15 minutes ever two hours in order to maintain focus and concentration is not necessarily synonymous with a restriction to performing simple tasks. Given the ALJ's failure to include Dr. Brown's moderate limitations on performing such tasks and learning new ones or explain why she did not include them, therefore, constitutes error as well.

II. The ALJ's Rejection of Ms. Dunn-Clarke's Opinions

With respect to the opinion evidence from Ms. Dunn-Clarke, plaintiff's mental health therapist, the ALJ found:

> Michele Dunn-Clarke, LMH[,] completed at least 4 different [Washington State Department of Social and Health Services ("DSHS")] Documentation Requests, in which she expressed varying opinions on the claimant's limitations. In a DSHS Documentation Request on January 12, 2010, Ms. Dunn-Clarke opined that the claimant could not work. However, the identified *mental* limitations of PTSD, OCD and major depressive disorder do not support the *physical* limitation of being unable to lift and carry any weight as opined (Exhibit 3F/6). In another DSHS Documentation Request on July 29, 2010, Ms. Dunne-Clarke [sic] opined that the claimant could not work, but the claimant had a "recent relapse on alcohol" at the time (Exhibit 3F/13). In a DSHS Documentation Request on December 16, 2010, Ms. Dunne-Clarke [sic] again opined that the claimant was "unable" to lift or carry any weight, but this limitation was only expected to last "6-12 months." (Exhibit 3F/22)[.] Then on January 5, 2012, Ms. Dunne-Clarke [sic] continued to opine that the claimant could not work, but unlike before, such limitations were not due to lifting or carrying limitations, which were "unknown." (Exhibit 16F/2)[.] At

> varying times, Ms. Dunne-Clarke [sic] has opined on different limitations and on when work activities can occur, without providing any supporting or accompanying documentation. Her opinions are accorded little weight.

AR 28 (emphasis in original). Plaintiff argues, and the undersigned agrees, that the ALJ failed to provide germane reasons for rejecting Ms. Dunn-Clarke's opinions.

The opinions of non-medical sources are treated as lay testimony, which "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Turner v. Commissioner of Social Security*, 613 F.3d 1217, 1223-24 (9th Cir. 2010); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

As plaintiff points out, in none of the forms Ms. Dunn-Clarke completed containing her opinions does she give any opinion on plaintiff's physical limitations. *See* AR 326-27, 336-37, 344-45, 685-86. Rather, Ms. Dunn-Clarke consistently indicated that she was did not know or was unable to evaluate that area of plaintiff's functional capacity. *See id.* In addition, while Ms. Dunn-Clarke did mention a recent alcohol relapse in one of the forms she completed, there is no indication in the record as to the extent of the impact it had on plaintiff's mental functional capabilities, or the extent Ms. Dunn-Clarke believed that relapse as opposed to the other mental health conditions she listed was responsible for the functional limitations she noted. *See* AR 336-37. Lastly, it is true that Ms. Dunn-Clarke did not mention or refer to any specific documentation in her opinions, but the record contains many mental health treatments notes that could provide

clinical support therefor. *See* AR 311-13, 315-23, 545-50, 748-53. Further, while the ALJ did discuss at least some of this evidence earlier in her decision, that was in the context of assessing plaintiff's credibility and not for the purpose of evaluating Ms. Dunn-Clarke's opinions. *See* AR 25-26. As such, here too the ALJ erred.

III. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the medical and lay witness opinion evidence in the record concerning plaintiff's mental functional limitations, and therefore with respect to her residual functional capacity and ability to perform other jobs existing in significant numbers in

the national economy,[2] remand for further consideration of those issues is warranted.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 24, 2015**, as noted in the caption.

DATED this 6th day of April, 2015.

Karen L. Strombom
United States Magistrate Judge

[2] If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five thereof the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical question posed to the vocational expert. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony thus must be reliable in light of the evidence in the record to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ in this case found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy based on the vocational expert's testimony, which in turn was based on a hypothetical question containing mental functional limitations substantially similar to those the ALJ included her RFC assessment. *See* AR 29-31, 72-75. But because as discussed above the ALJ failed to properly consider medical and lay witness opinion evidence indicating the presence of more restrictive mental functional limitations, the ALJ's RFC assessment and hypothetical question she posed cannot be said to be supported by substantial evidence, and therefore it was improper for the ALJ to rely on the testimony of the vocational expert here.